IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NELLY IDOWU,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER OF DETENTION<br><br>Case No. 2:20-CR-284-TS-003<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's Appeal of the Magistrate Judge's Order of Detention. The Court conducted a hearing on April 10, 2023, to hear argument from the parties. Following the hearing, the Court took the matter under advisement. For the reasons described herein, the Court affirms the Magistrate Judge's Order of Detention.

I. BACKGROUND

Defendant is charged as one of four co-defendants in a 10-Count Indictment for actions related to a conspiracy in which the co-defendants allegedly laundered millions of dollars received from dozens of victims (primarily widows over age 65) who were defrauded by unknown individuals. Defendant is charged as follows: (Count 1) Conspiracy to Launder Money; (Count 6) Money Laundering in violation of 18 U.S.C. § 1957; and (Count 8) Money Laundering in violation of 18 U.S.C. § 1957.

A Pretrial Services Report was filed on November 9, 2020, in preparation for the first detention hearing in this matter. That report stated that there was not a presumption of detention in this matter and recommended that Defendant be released on her own recognizance, despite

stating some concerns with Defendant's ties to Nigeria. The government stipulated to Defendant's release on her own recognizance on November 10, 2020, at Defendant's Initial Appearance before Magistrate Judge Pead. Defendant was released following that hearing. The record is not clear on what, if any, terms of release were imposed. However, 18 U.S.C. § 3142(b) requires that release on recognizance is "subject to the condition that the person not commit a Federal, State, or local crime during the period of release."

On October 31, 2022, the government filed a Motion to Revoke Pre-Trial Release.[1] In support, the government alleged that, while on pretrial release, Defendant had applied for two separate Payroll Protection Plan (PPP) loans for $20,833 each. In her application, Defendant allegedly marked "no" to a question asking if she was "for any felony, presently subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction."[2] The government argued that this misrepresentation violated two federal criminal statutes: Wire Fraud under 18 U.S.C. § 1343 and False Statements to the SBA under 15 U.S.C. § 545(a). The government argued that a defendant released on their own recognizance is required to "not commit a Federal, State, or local crime,"[3] while on pretrial release, and detention was therefore appropriate. Magistrate Judge Pead conducted a hearing on the Motion on November 29, 2022, and ordered Defendant detained.

On March 8, 2023, Defendant filed a Motion for Review of Detention[4] on the grounds that there was a change of circumstances that warranted release and that she should not have been detained or subject to detention from the outset of the case. Magistrate Judge Pead held a

---

[1] Docket No. 95.
[2] Docket No. 95-1, at 2; Docket No. 95-2, at 2.
[3] 18 U.S.C. § 3142(b).
[4] Docket No. 132.

2

hearing on the Motion on March 21, 2023. At the conclusion, Magistrate Judge Pead again ordered that Defendant be detained pending trial. Defendant filed her Motion for Review of Detention by District Judge on March 28, 2023.[5]

## II. STANDARD OF REVIEW

The Court considers Defendant's request for a review of the Magistrate Judge's order of detention under 18 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1). The Court conducts a de novo review of the detention issue giving no deference to the Magistrate Judge's findings or conclusions.[6] In so doing, the Court may elect to start from scratch and take evidence—whether or not new evidence is proffered—and also may incorporate the record of the proceedings conducted by the Magistrate Judge, including any exhibits.[7]

In making its determination, this Court is governed by the same standards as the Magistrate Judge. 18 U.S.C. § 3148 governs sanctions for a defendant's violation of a release condition. Section 3148(b) provides that where a defendant is "charged with violating the condition of release that such person not commit a Federal, State, or local crime during the period of release" that defendant "shall be brought before the [court] who ordered the release." The court is then instructed to order revocation of detention if, after conducting a hearing, the court finds (1) "probable cause to believe that the person has committed a Federal, State, or local crime while on release" and (2) "based on based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will

---

[5] Docket No. 139.

[6] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under §3145(a) is de novo).

[7] *Lutz*, 207 F. Supp. 2d at 1251.

not flee or pose a danger to the safety of any other person or the community"; or "the person is unlikely to abide by any condition or combination of conditions of release."[8]

Section 3148(b) goes on to direct that "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."[9]

> Once the presumption is invoked, the burden of production shifts to the defendant. However, the burden of persuasion regarding risk-of-flight and danger to the community always remains with the government. The defendant's burden of production is not heavy, but some evidence must be produced. Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.[10]

"If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 . . . and may amend the conditions of release accordingly."[11]

As stated, the burden of persuasion remains with the government. The government must prove risk of flight by a preponderance of the evidence and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[12] As directed by § 3148 and § 3142(g), to determine whether there are conditions of release that will reasonably assure the appearance of Defendant and the safety of any other person and the community, this Court considers the following factors:

---

[8] 18 U.S.C. § 3148(b).

[9] *Id.* § 3148(b)(2)(A).

[10] *United States v. Stricklin*, 932 F.2d 1353, 1354–55 (10th Cir. 1991).

[11] 18 U.S.C. § 3148(b).

[12] *Cisneros*, 328 F.3d at 616.

(1) The nature and circumstances of the offense charged;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . . [13]

### III.   DISCUSSION

The Court must first determine if the allegations against Defendant regarding her alleged fraudulent actions in obtaining a PPP loan are supported by probable cause, thereby giving rise to a presumption that no condition or combination of conditions will assure that [Defendant] will not pose a danger to the safety of any other person or the community. The government asserts that Defendant committed Wire Fraud and False Statement to the SBA.

18 U.S.C. § 1343 defines the crime of Wire Fraud as follows:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

15 U.S.C. § 645(a) provides as follows:

Whoever makes any statement knowing it to be false . . . for the purpose of obtaining for himself or for any applicant any loan . . . or for the purpose of influencing in any way the action of the Administration, or for the purpose of obtaining money, property, or anything of value, under this chapter, shall be punished by a fine of not more than $5,000 or by imprisonment for not more than two years, or both.

---

[13] 18 U.S.C. § 3142(g).

At the April 10 hearing, Defendant argued that she lacked the requisite *mens rea* to be guilty of the alleged crimes, because her answering "no" to the question of whether she was currently under indictment for a felony crime was simply a mistake. In response, the government pointed to the two PPP loan application forms at issue, which were previously filed on the record.[14] The forms show a check in the "no" box in response to the question of whether the applicant is currently under indictment for a felony crime. Significantly, the forms also show Defendant's written initials where she was requested to "confirm [her] response" to that question. Further, at the November 29 hearing in front of Judge Pead, the government proffered that: according to the SBA, the indictment question on the PPP loan application is a material question in that an affirmative answer would have resulted in an automatic rejection; that the application was submitted online in Virginia and received in Florida and was therefore sent through interstate wire; and that the loan was ultimately approved and resulted in Defendant receiving the funds.

"Probable cause under § 3148(b)(1)(A) requires only that the facts available to the judicial officer warrant a man of reasonable caution in the belief that the defendant has committed a crime while on bail."[15] Based on the above-described evidence and proffers on the record, the Court finds that the government has produced sufficient evidence to support a finding that there is probable cause to believe that Defendant committed a Federal, State, or local crime while on release. The Court will therefore apply the rebuttable presumption as described.

Next, the Court will address the arguments in Defendant's Motion. First, Defendant argues "she should never have [been] subject to a Detention Hearing at the outset of the case"

---

[14] Docket Nos. 95-1, 95-2.

[15] *United States v. Cook*, 880 F.2d 1158, 1160 (10th Cir. 1989) (internal quotation marks and citation omitted).

because none of the criminal conduct she is accused of qualifies for detention under 18 U.S.C. § 3142(f).[16] However, this analysis ignores the plain language of § 3148, which applies to any "person who has been released under section 3142."[17] Defendant was released consistent with 18 U.S.C. § 3142(b), which provides that the court "shall order the pretrial release of the person on personal recognizance . . . subject to the condition that the person not commit a Federal, State, or local crime during the period of release." When Defendant was alleged to have violated the condition of her release by committing a crime, this triggered the proceedings enumerated in § 3148. Section 3148 provides that "[a] person who has been released under section 3142 of this title and who has violated a condition of [their] release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court."[18] Subsection (b), quoted above, goes on to describe the necessary steps and considerations for determining whether detention is appropriate, including directing the Court to the considerations listed in § 3142(g). Therefore, that Defendant was not initially eligible for detention under § 3142(f) does not mean she cannot later be detained under § 3148 for violating her conditions of release.

Defendant further maintains she is not guilty of the crimes contained in the allegations against her and argues that "to revoke her release for an allegation that is not a conviction is erroneous."[19] Section 3148 makes clear that the court need only find that the allegations are supported by probable cause to justify a revocation hearing. As explained above, the Court finds that there is probable cause to find that Defendant committed the alleged felonies while on

---

[16] Docket No. 139, at 3.
[17] 18 U.S.C. § 3148(a).
[18] *Id.*
[19] Docket No. 139, at 4.

pretrial release. Therefore, the Court rejects Defendant's argument that her release cannot be revoked based on the allegations at issue.

Finally, the Court will address the appropriateness of Defendant's detention under the § 3142(g) factors, bearing in mind that Defendant must rebut the presumption that she poses a danger to the community. "Once the presumption arises, the ball is in the defendant's court, and it is incumbent on the defendant to come forward with some evidence to rebut the presumption."[20]

At the April 10 hearing, Defendant argued that her ties to the United States are significant. She noted that her husband and two sons live in the United States and she would never leave them. She argued that her "family is in dire circumstances and desperately need her released so that her husband and children have housing and food while the case is adjudicated."[21] She also proffered that her older son has recently immigrated to the United States and that her release is required so that she can finalize immigration processes so that he can stay in the United States legally. She further stated that she and her family members would surrender their passports to the Court until the criminal proceedings conclude. Defendant's Motion noted that she does not have any history of committing crimes of violence and that "she would abstain from all applications, loans, bank transfers etc. activity during her release."[22]

Defendant's representations primarily address the issue of whether Defendant poses a risk of flight. Defendant does not face a presumption on the issue of flight and the Court agrees that a preponderance of the evidence does not show that the Defendant is likely to flee, given her

---

[20] *Cook*, 880 F.2d at 1162 (citations omitted).

[21] Docket No. 139, at 5.

[22] *Id.* at 4.

significant ties to the United States and her employment with the Air Force. The Court's primary inquiry is then whether Defendant has presented sufficient evidence to overcome the presumption that she poses a danger to the community. The Court finds that the limited representations Defendant made that are relevant to the Court's dangerousness determination fail to meet her burden of production to rebut the presumption of detention.

In her Motion, Plaintiff points to the fact that she does not have a history of committing violent offenses to support her release. However, the Tenth Circuit has made clear that "[t]he concern about safety of the community is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."[23] Further, as discussed below, even if Defendant had met her burden of production, the § 3142(g) factors weigh in favor of detention.

In accordance with § 3142(g), the Court first considers the nature and circumstances of the offense charged. Here, Defendant is charged with crimes associated with her alleged actions to launder large amounts of fraudulently obtained money. Courts have found that "economic crimes can be 'dangerous' to the community should the crimes continue on detention."[24] Such is

---

[23] *United States v. Voog*, 702 F. App'x 692, 694 (10th Cir. 2017) (quoting *Cook*, 880 F.2d at 1161).

[24] *United States v. Zapien*, No. 3:14-CR-00037-1, 2014 WL 1028435, at *5 (M.D. Tenn. Mar. 17, 2014) (citing *United States v. Giordano,* 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005)); *see also United States v. Hanson*, No. 3:22-CR-00076, 2022 WL 1813585, at *7 (N.D. Ohio May 3, 2022), *report and recommendation adopted*, No. 3:22 CR 76, 2022 WL 1803337 (N.D. Ohio June 2, 2022) ("Here, I perceive potential serious danger to the community by releasing a defendant who is alleged to have participated in offenses that caused losses to victims that exceed $1 million. The alleged use of multiple identities, false identity documents, and bank accounts further represents a danger to the community. I conclude this factor also favors pretrial detention.").

the case here where Defendant is now alleged to have committed additional financial crimes while on release. The Court finds that Defendant's alleged actions to obtain over $40,000 in government loans through fraudulent representations while on pretrial release for allegations of laundering fraudulently obtained money from dozens of victims, provides sufficient evidence that she poses a danger to the community by clear and convincing evidence and, therefore, weighs in favor of detention.

Second, the Court considers the weight of the evidence. The Indictment provides probable cause that Defendant committed the charged offenses. The government also filed numerous financial documents supporting the underlying money laundering charges. The Court has also found that there is probable cause to believe that the Defendant committed the alleged fraudulent actions related to her obtaining two PPP loans. Therefore, this factor weighs in favor of detention.

Third, the Court considers the history and characteristics of the person. In 2017, Defendant escaped from Nigeria to the United States and was granted asylum. Defendant is a resident of the United States. Prior to incarceration, Defendant financially supported her husband and two sons because her husband does not have the ability to work in the United States due to his immigration status. Defendant has worked a number of jobs since being in the United States. In 2020, Defendant decided to join the Air Force. During her pretrial release, she was working for the Air Force and living in military housing in Virginia. She also subsidized her income by working side jobs in the evenings. She alleged her family will likely be kicked out of their housing and will be unable to afford basic living necessities and housing without her income. Her older son has recently been allowed to come to the United States from Nigeria and risks

immigration consequences if she remains incarcerated. Defendant alleged she has not been discharged from the military and could maintain her employment with the Air Force, if released. At the April 10 hearing, Defendant represented that the Air Force has not stated definitively if or when they will discharge Defendant; it could happen any time, but they may wait until after the pending charges are resolved to take action. Given the Defendant's ties to the United States, current involvement with the Air Force, and her importance to her family, Defendant would presumably be motivated to not commit crimes and endanger society. However, her family's reliance on her as the sole source of income may be part of her motivation to obtain money by the fraudulent means alleged by the government. Therefore, the Court finds that this factor is neutral.

      Finally, the Court considers the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release. For the same reasons discussed previously, the Court finds that Defendant's alleged crimes committed both before and while on pretrial release demonstrate that she is willing to obtain money by fraudulent means, and therefore, poses a danger to society. The Court therefore finds that this factor weighs in favor of detention.

      In consideration of each of the above factors, the Court finds that the Defendant poses a danger to society by clear and convincing evidence. Without any meaningful way to limit Defendant's access to the Internet or other means of communication, the Court further finds that no conditions or combination of conditions are likely to alleviate that danger. The Court therefore affirms the Magistrate Judge's Order of Detention.

## IV.     CONCLUSION

It is therefore

ORDERED that the Magistrate Judge's Order of Detention (Docket No. 138) is AFFIRMED. It is further

ORDERED that the Motion to Revoke Pretrial Release (Docket No. 95) is GRANTED.

DATED this 12th day of April, 2023.

BY THE COURT:

_____
Ted Stewart
United States District Judge