IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>               Plaintiff,<br><br>v.<br><br>NELLY IDOWU,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S OBJECTION TO DELIBERATE IGNORANCE JURY INSTRUCTION<br><br>Case No. 2:20-CR-284 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendant's objection to the Court's inclusion of a deliberate ignorance jury instruction. For the reasons discussed below, the Court will overrule the objection.

I.     BACKGROUND

Defendant is charged with one count of Conspiracy to Launder Money and two counts of Money Laundering or aiding and abetting in such. For the government to support these charges, the government must present evidence that, among other things, Defendant engaged or attempted to engage in a monetary transaction and that she knew that transaction involved money derived from criminal activity.[1] The government has proposed a jury instruction which explains the term "knowingly" and provides that, among other things, "knowledge can be inferred if the defendant deliberately blinded herself to the existence of a fact." Defendant objects to the inclusion of this language.

---

[1] 18 U.S.C. § 1957.

1

## II. ANALYSIS

The Tenth Circuit has cautioned that "the use of a deliberate ignorance instruction 'is rarely appropriate . . . because it is a rare occasion when the prosecution can present evidence that the defendant deliberately avoided knowledge.'"[2] Such an instruction is appropriate "only when the prosecution presents evidence that the [d]efendant purposely contrived to avoid learning all the facts in order to have a defense in the event of a subsequent prosecution."[3] "When someone knows enough to put him on inquiry, he knows much. If a person with a lurking suspicion goes on as before and avoids further knowledge, this may support an inference that he has deduced the truth and is simply trying to avoid giving the appearance (and incurring the consequences) of knowledge."[4]

Therefore, to instruct the jury as to deliberate ignorance, "the facts must support the inference that the defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution."[5] In determining whether the government has presented sufficient evidence supporting inclusion of a deliberate ignorance instruction to the jury, "the

---

[2] *United States v. Hanzlicek*, 187 F.3d 1228, 1233 (10th Cir. 1999) (quoting *United States v. Hilliard*, 31 F.3d 1509, 1514 (10th Cir. 1994)).

[3] *United States v. Espinoza*, 244 F.3d 1234, 1242 (10th Cir. 2001) (quoting *Hanzlicek*, 187 F.3d at 1233).

[4] *United States v. de Francisco-Lopez*, 939 F.2d 1405, 1409 (10th Cir. 1991) (quoting *United States v. Ramsey*, 785 F.2d 184, 189 (7th Cir. 1986)).

[5] *Id.* (quoting *United States v. Alvarado,* 838 F.2d 311, 314 (9th Cir. 1988)).

[g]overnment is entitled to rely on circumstantial evidence and the benefit of the favorable inferences to be drawn therefrom."[6]

The evidence presented in trial relevant to deliberate ignorance is as follows. The government presented evidence from FBI Forensic Accountant Angela Mennitt that Defendant received large amounts of money into her various bank accounts and subsequently transferred portions of those funds to various other bank accounts in both national and international bank accounts. Mennitt further testified that the bank records showed that a number of the bank accounts Defendant opened had been closed by the bank. Mennitt also testified about Defendant's tax documents showing that, in 2018, Defendant claimed approximately $11,000 of income, but her bank records showed $130,000 in bank deposits that year. She also suggested that her view of the relevant bank records suggested that Defendant had fraudulently opened a bank account in the name of Kelly Andrew, which she had money deposited into and transferred out of.

The government also presented the testimony of FBI Agent John David Coyle and a video recording of Agent Coyle's interview with Defendant. Agent Coyle testified that when asked about her transfer of $19,500 to Hang Seng Bank in January 2019, Ms. Idowu stated she did not know the purpose of the transfer. He further testified that, when he asked her about a $100,000 deposit into her account from Emmanuel Adesotu, she stated that she knew the money was not Mr. Adesotu's, but did not know from where or whom it originated. Further, when asked

---

[6] *United States v. Delreal-Ordones*, 213 F.3d 1263, 1268 (10th Cir. 2000) ("A deliberate ignorance instruction is appropriate when a defendant denies knowledge of an operant fact but the evidence, direct or circumstantial, shows that defendant engaged in deliberate acts to avoid actual knowledge of that operant fact.").

about transferring that money to a person named Godwin Omene, she stated she did not know Godwin Omene, but would have to ask her brother. She did not disclose at the time of the interview that her brother was serving a prison sentence.

The government introduced the testimony of two of Defendant's co-defendants, Mr. Emmanuel Adesotu and Mr. Nnamdi Chukwu. Mr. Adesotu testified about incidents where Defendant would "move" large amounts of money for him in exchange for payment. He testified that Defendant never asked about and they did not discuss the source of the money or why he needed the money moved. He further testified of incidents where Defendant would ask him to move money for her. He testified that, while they never discussed the source of the money or purpose of the transfer, at some point during his involvement, it became clear to him that the funds he was moving were sourced from fraud.

Mr. Chukwu testified that Defendant introduced him to Mr. Adesotu; that Defendant was usually made aware when Chukwu and Adesotu would move money for each other; that at one point, a monetary transaction was unsuccessful and Defendant became very angry and stated the people they were moving money for were "dangerous;" and that, at some point during his involvement in the scheme, it became very apparent to him that the source of the funds was not legitimate.

Following the close of the government's case, Defendant testified as to her understanding of the financial transactions supporting the charges against her. Defendant testified that her brother, Emeka Wilson-Metus, had referred customers for whom she conducted personal shopping. She stated she trusted her brother, and she did not suspect any unlawful activity underlying the money that was being transferred to her by individuals she did not know. Instead, she believed the individuals were associates of her trusted brother, and they were sending her

money so she could purchase things on their behalf or otherwise provide a service. She never reached out to or had any direct communication with these individuals.

Defendant testified that she became aware that her brother had been arrested and was serving a prison sentence and continued to accept referrals from him and otherwise follow his instructions. Upon being asked by the government, she stated that, during the relevant time, she did not know what crime he had committed supporting the prison sentence, despite having visited him and spoken with him on the phone while he was in prison.

Upon questioning by the government, Defendant discussed a bank account that had been closed and that the reason the bank gave her for the closure was "suspicious activity." She stated she was unaware of the specifics of the suspicious activity. The government also asked Ms. Idowu about an instance where an account she had opened was closed following a $300,000 deposit, which came in days after she opened the account from a client referred by her brother. When she called the bank to find out the reason for the closure, the bank did not give her a clear explanation, but stated they had the ability to terminate the banking relationship and were doing so. Defendant stated she made no additional efforts to obtain an explanation or access the transferred funds and continued to accept transfers from clients referred by her brother into other bank accounts.

Courts have found a deliberate ignorance instruction appropriate where the evidence suggests a defendant is presented with information that promotes a defendant's subjective belief in the existence of a fact, but then declines to "ask the natural follow-up question."[7] For

---

[7] *United States v. Wert-Ruiz*, 228 F.3d 250, 257 (3d Cir. 2000).

example, in *United States v. Neighbors*,[8] the Tenth Circuit upheld the district court's inclusion of a deliberate ignorance instruction where the testimony supported that the defendant, who was accused of knowingly buying and selling stolen property, never inquired as to the origins of her merchandise in the face of suspicious circumstances. Several witnesses testified that they sold the defendant brand new merchandise at half of the retail value, but the defendant never asked about the origins of the merchandise, even though it would appear the sellers could have returned the merchandise to a store for full value.[9]

Similarly, in *United States v. Wert-Ruiz*, the Third Circuit found the evidence presented at trial supported a deliberate ignorance instruction where testimony implied that the defendant "knew that she was being invited to engage in activities designed to conceal the source of certain moneys *without* being specifically told the source of the funds."[10] The court held that "[t]he fact that [the defendant] did not ask the natural follow-up question to determine the source of those funds could be reasonably considered by a jury to be evidence of willful blindness."[11]

Similar to those cases, the evidence in this case is sufficient to support a reasonable inference that Defendant was aware of a high probability that the funds she was receiving and transferring were obtained illegally, and she purposely avoided asking the natural follow-up question to discern how the funds were obtained.

First, the following evidence, taken as a whole and viewed in the light most favorable to the government, supports that Defendant was subjectively aware of a high probability that the

---

[8] 457 F. App'x 785 (10th Cir. 2012).

[9] *Id.* at 791.

[10] 228 F.3d at 257.

[11] *Id.*

funds involved were not obtained legally: testimony and bank records supporting that Defendant opened numerous bank accounts at various banking institutions through which she received and transferred large amounts of money; testimony and banking records supporting that she obtained payment for doing so; testimony that she understood that the people she was transferring money for were dangerous; testimony that her codefendants, who were conducting the same type of financial transactions for the same people as Defendant, came to know or believe that the money they were moving was obtained through fraud or other illegitimate means; testimony and tax records showing that her tax returns did not represent her earnings obtained from the relevant financial transactions;[12] testimony that multiple accounts she used to receive money from the individuals referred to her by her brother were closed by the bank; testimony and government records showing that her brother was in prison during the time he was supposedly referring clients to her and, further, that she did not disclose this fact to Agent Coyle during her interview; and testimony and records suggesting that she opened a bank account by use of false passport in a name other than her own to move some of the money.[13]

Second, the following evidence, viewed in the light most favorable to the government, supports a reasonable inference that Ms. Idowu took deliberate efforts to avoid knowledge of where the funds were coming from, how they were obtained, or why they needed to be moved:

---

[12] *See United States v. Bornfield*, 145 F.3d 1123, 1130 (10th Cir. 1998) (finding that a deliberate ignorance jury instruction was supported where the evidence showed defendant received funds from a client, the defendant knew that the legitimate income reported by the client did not support the expenses reported by the client, and that some of the funds were not reported on the client's tax returns).

[13] *See United States v. Gonzales*, 90 F.3d 1363, 1371 (8th Cir. 1996) (upholding willful blindness instruction where the defendants, who were charged with laundering drug money, failed to inquire about the source of the money and used incorrect names and addresses on documents when wiring money).

testimony that she did not and does not personally know the individuals who transferred large amounts of money to her account, the origins of some of those funds, or the identity of some of the individuals to whom she transferred money; testimony that she did not ask about or discuss the source of the funds with her codefendants; testimony that she did not take further efforts to identify the reason for a bank's closure of her various accounts, the identity of the individuals from which she was receiving large sums of money, or the reason her brother was serving a prison sentence.

Based on the above analysis, the Court finds that the evidence presented at trial supports a reasonable inference that Defendant willfully blinded herself to the unlawful source of the funds. The Court will therefore provide the jury with the government's proposed deliberate ignorance instruction.

### III.   CONCLUSION

It is therefore

ORDERED that Defendant's objection to the inclusion of a deliberate ignorance instruction is OVERRULED.

DATED this 23rd day of October, 2023.

BY THE COURT:

Ted Stewart
United States District Judge